IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **CRIMINAL NO. 05-170-5** |
| | : | |
| **CHRISTOPHER BOOKER** | : | |

## MEMORANDUM

**Padova, J.**                                                                                           **December 7, 2012**

     Defendant Christopher Booker has filed an Amended Motion to Suppress Post-Arrest Statements. We held a Hearing on the Motion on November 14, 2012. For the following reasons, the Motion is denied.

## I.     BACKGROUND

     Superseding Indictment No. 05-170 charges Booker with one count of conspiracy to commit armed bank robbery, in violation of 18 U.S.C. § 371 (Count I); one count of committing and aiding and abetting the commission of armed bank robbery of the Citizens Bank located in Brookhaven, Pennsylvania on June 15, 2004, in violation of 18 U.S.C. §§ 2113(d) and 2 (Count IV); and one count of using and carrying a firearm during a crime of violence and aiding and abetting the use and carrying of a firearm in relation to a crime of violence on June 15, 2004, in violation of 18 U.S.C. §§ 924(c) and 2 (Count V). On February 1, 2007, a jury convicted Booker of all three of these counts. On July 2, 2012, Booker's conviction was vacated by the United States Court of Appeals for the Third Circuit for reasons unrelated to the instant Motion and this action was remanded for a new trial. On October 18, 2012, Booker filed the instant Amended Motion to Suppress, seeking the suppression of oral statements that he made to FBI Special Agent Vito Roselli on November 30, 2004, December 8, 2004 and December 22, 2004, regarding the conspiracy to commit armed bank robbery and the June 15, 2004 armed bank

robbery. These oral statements were memorialized by Agent Roselli on FD-302 forms. The Assistant United States Attorney prosecuting this case has indicated that he intends to introduce these three statements at Booker's new trial.

Booker filed a Motion to Suppress the same three statements prior to his first trial. A Hearing was held on that Motion on November 2, 2006, during which both Agent Roselli and Booker testified. We denied the Motion following the Hearing. (See 11/2/06 Order-Mem.) The parties have stipulated that the testimony taken during the November 2, 2006 Hearing should be part of the record of the instant Amended Motion to Suppress. (11/14/12 Hr'g Tr. at 2-3.)

The first two times that Agent Roselli met with Booker, Booker was detained at the Atlantic County Correctional Facility ("ACCF") in connection with an October 29, 2004 arrest on charges of unlawful possession of firearms and cocaine base in Atlantic City, New Jersey. (Id. at 6-7; 11/2/06 Hr'g Tr. at 13-14, 44-45, 54.) When Booker was arrested in Atlantic City, he was advised of his rights under Miranda v. Arizona, 384 U.S. 436 (1966), refused to waive those rights, and invoked his Fifth Amendment right to remain silent and his Sixth Amendment right to counsel. (11/2/06 Hr'g Tr. at 50-51.) Counsel was appointed to represent him on those charges, and counsel had previously been appointed to represent him in another open case in New Jersey. (Id.) Booker was in custody and did not have counsel present when he spoke to Agent Roselli on November 30, 2004, December 8, 2004 and December 22, 2004. (11/14/12 Hr'g Tr. at 16-17.)

Agent Roselli went to the ACCF to meet with Booker on November 30, 2004, because he had been informed, by police officers from the Darby Borough Police Department, that Booker wanted to speak to someone in the FBI about bank robberies. (11/2/06 Hr'g Tr. at 12-13.) Agent Roselli, was, at that time, involved in the investigation of three bank robberies:  the April 2004 robbery of an Artisans' Bank in Wilmington, Delaware; the June 15, 2004 robbery of a Citizens

Bank in Brookhaven, Pennsylvania; and the September 2004 robbery of an M&T Bank in Andalusia, Pennsylvania. (11/2/06 Hr'g Tr. at 10-12.) Prior to his first visit to Booker at the ACCF, Agent Roselli had not received any information that suggested that Booker had any involvement in any of those robberies. (Id. at 16, 47-48.)

Before the Darby Borough Police Officers contacted Agent Roselli about Booker's interest in speaking with the FBI, those officers, Detective Dominic Dellabarba and Lieutenant Gibbney,[1] were aware that Agent Roselli was a member of the FBI's bank robbery squad and had spoken with Agent Roselli regarding several armed robbery investigations. (Id. at 45; 11/14/12 Hr'g Tr. at 15.) In addition, Agent Roselli had spoken with either Detective Dellabarba or Lieutenant Gibbney in late October 2004 regarding information that Agent Roselli had received implicating Booker in the murder of Zaqi Logan. (11/2/06 Hr'g Tr. at 45-46; 11/14/12 Hr'g Tr. at 4-5, 15.) Some time after he spoke with Agent Roselli about Booker's possible involvement in the Logan murder, Detective Dellabarba learned that Booker was detained at the ACCF, and he and Lieutenant Gibbney went there to speak with Booker about the Logan murder. (11/2/06 Hr'g Tr. at 12, 47; 11/14/12 Hr'g Tr. at 5.) Shortly after they spoke with Booker, either Detective Dellabarba or Lieutenant Gibbney called Agent Roselli and told him "that they had gone out and talked to Mr. Booker, and that he had -- he wanted to talk to the FBI about some bank robbery activity." (11/2/06 Hr'g Tr. at 47; see also id. at 12; 11/14/12 Hr'g Tr. at 7.)

Prior to speaking with Booker on November 30, 2004, Agent Roselli advised Booker of his Miranda rights and had him initial and sign an FD-395 Advice of Rights form, which was dated November 30, 2004, 9:18 a.m. (11/2/06 Hr'g Tr. at 13-14; Gov't Hr'g Ex. 5.) By initialing

---

[1] The Lieutenant's name is spelled Gibbney in the transcript of the 11/2/06 Hearing and Giveny in the transcript of the 11/14/12 Hearing. (See 11/2/06 Hr'g Tr. at 46; 11/14/12 Hr'g Tr. at 7.)

and signing the form, Booker affirmed that he understood his right to remain silent and right to an attorney and that he was "willing to answer questions without a lawyer present." (Gov't Hr'g Ex. 5.) Booker's signature and initials were witnessed by Agent Roselli and FBI Special Agent Joseph Fry at 9:20 a.m. (Id.) This Advice of Rights form was entered into evidence at the November 2, 2006 Hearing as Government Exhibit 5. (Id.)

During their conversation on November 30, 2004, Booker told Agent Roselli that he wanted to get out of Atlantic County and asked Agent Roselli to adopt "the bank robbery case, and, if possible, the drug case, and bring them back to Philadelphia." (11/2/06 Hr'g Tr. at 17.) Booker wanted to be transferred from the ACCF to the Federal Detention Center in Philadelphia. (Id. at 18.) At the conclusion of their November 30, 2004 meeting, Booker asked Agent Roselli to return. (Id. at 23.)

When Agent Roselli returned to meet with Booker at the ACCF on December 8, 2004, he forgot to bring a blank FD-395 Advice of Rights Form. (Id. at 14.) Consequently, when Agent Roselli advised Booker of his Miranda rights before speaking with him on December 8, 2004, he had Booker initial and sign the November 30, 2004 FD-395 form for a second time. (11/2/06 Hr'g Tr. at 14.) Government Exhibit 5 thus also contains the date 12/8/04, 9:52 a.m. and was initialed by Booker on both sides of each line of the form which lists his Miranda rights. (Gov't Hr'g Ex. 5.) In addition, Booker's signature appears twice underneath the following statement: "I have read this statement of my rights and I understand what my rights are. At this time, I am willing to answer questions without a lawyer present." (Id.) Agent Roselli and FBI Special Agent Tom Perzichilli witnessed Booker sign the Advice of Rights Form for the second time at 9:53 a.m. on December 8, 2004. (11/2/06 Hr'g Tr. at 14; Gov't Hr'g Ex. 5.) Booker admitted, during the November 2, 2006 Hearing, that the initials and signatures on Government Exhibit 5

are his and that he initialed and signed that Advice of Rights form the first two times that Agent

Roselli interviewed him. (11/2/06 Hr'g Tr. at 58.) At the conclusion of their December 8, 2004

interview, Agent Roselli and Booker agreed to meet again at a later date and Agent Roselli told

Booker that he was trying to "take [his] case federally." (Id. at 30.)

On December 22, 2004, Agent Roselli, accompanied by Darby Borough Police Detectives

Pitts and Slowik, transferred Booker from the ACCF to the Federal Detention Center in

Philadelphia, Pennsylvania, after the United States Attorney's Office brought federal charges

against Booker arising from his Atlantic City firearms and drug arrest. (Id. at 31-35.) Agent

Roselli advised Booker of his <u>Miranda</u> rights, and Booker waived those rights, before they got in

the car to drive to Philadelphia from the ACCF. (Id. at 31-32.) Booker made his December 22,

2004 oral statement to Roselli during the car ride from Atlantic City, New Jersey, to Philadelphia,

Pennsylvania, and once they arrived in Philadelphia, in the FBI office there. (Id. at 33-34.)

Booker signed another FD-395 Advice of Rights Form in Philadelphia on December 22, 2004,

before Agent Roselli interviewed him in the FBI's Philadelphia office. (Id. at 37; Gov't Hr'g Ex.

6.) Booker admitted, during the November 2, 2006 Hearing, that he signed the Advice of Rights

Form in front of Agent Roselli on December 22, 2004 at 12:14 p.m. and thereby indicated that he

"read the statement of [his] rights and . . . understood what [his] rights were," and was "willing to

answer questions without a lawyer present." (11/2/06 Hr'g Tr. at 63-64.) Booker's December 22,

2004 FD-395 Advice of Rights Form was entered into evidence at the November 2, 2006 Hearing

as Government Exhibit 6.

## II.    LEGAL STANDARD

<u>Miranda v. Arizona</u>, 384 U.S. 436 (1966), provides that custodial interrogation must not

take place in the absence of certain procedural safeguards. <u>See</u> <u>Alston v. Redman</u>, 34 F.3d 1237,

1242 (3d Cir. 1994) (citations omitted). "Miranda announced that police officers must warn a suspect prior to questioning that he has a right to remain silent, and a right to the presence of an attorney." Maryland v. Shatzer, -- U.S. --, 130 S. Ct. 1213, 1219 (2010) (citing Miranda, 384 U.S. at 444). A police officer may not interrogate a suspect if, after he has been given his Miranda warnings, "the suspect indicates that he wishes to remain silent." Id. (citing Miranda, 384 U.S. at 473–74). "Similarly, if the suspect states that he wants an attorney, the interrogation must cease until an attorney is present." Id. (citing Miranda, 384 U.S. at 474). A suspect can, however, waive his Miranda rights. Id. (citing Miranda, 384 U.S. at 475). "To establish a valid waiver, the [prosecution] must show that the waiver was knowing, intelligent, and voluntary . . . ." Id. (citing Miranda, 384 U.S. at 475). The police may question a suspect outside the presence of counsel, and make substantive use of the resulting statements at trial, only if the suspect voluntarily, intelligently, and knowingly waives his right to remain silent and to the presence of an attorney. Alston, 34 F.3d at 1242 (citing Miranda, 384 U.S. at 479) (remaining citations omitted). If the defendant seeks the suppression of a post-arrest statement, "the Government has the burden of proving the waiver by a preponderance of the evidence." United States v. Velasquez, 885 F.2d 1076, 1086 (3d Cir. 1989) (citing Colorado v. Connelly, 479 U.S. 157, 168-69 (1986)).

Once a suspect invokes the right to counsel under Miranda, there can be no further police-initiated interrogation until counsel has been made available to the suspect, "'unless the accused himself initiates further communication, exchanges, or conversations with the police.'" Schatzer, 130 S. Ct. at 1219 (quoting Edwards v. Arizona, 451 U.S. 477, 484-85 (1981)). The requirement that counsel be "made available" means that police may not initiate questioning in counsel's absence (and not merely that they may not initiate questioning until the accused has

met with an attorney). Minnick v. Mississippi, 498 U.S. 146, 152-53 (1990). "[I]t is presumed that any subsequent waiver that has come at the authorities' behest, and not at the suspect's own instigation, is itself the product of the 'inherently compelling pressures' [of custodial interrogation] and not the purely voluntary choice of the suspect." Arizona v. Roberson, 486 U.S. 675, 681 (1988). Once properly invoked, the right to the appointment of counsel for interrogation does not disappear merely because the later interrogation regards a different offense, or different law enforcement authorities. Id. at 683-84, 687-88. Further, the government need not be aware of the invocation of the right; the burden is on law enforcement to determine whether the suspect has requested counsel. Id. at 687-88. The Edwards prohibition on further police-initiated interrogation applies, therefore, "when the subsequent interrogation pertains to a different crime, when it is conducted by a different law enforcement authority, and even when the suspect has met with an attorney after the first interrogation." Schatzer, 130 S. Ct. at 1222 (citing Roberson, 486 U.S. at 678; Minnick, 498 U.S. at 148-49, 153-54).

Edwards's limitation on future uncounseled police interrogation is not, however, limitless. The Edwards prohibition on further police interrogation does not apply where the suspect initiates the conversation with law enforcement after requesting an attorney. See Minnick, 498 U.S. at 156 ("Edwards does not foreclose finding a waiver of Fifth Amendment protections after counsel has been requested, provided the accused has initiated the conversation or discussions with the authorities . . . ."). A police officer may, therefore, interrogate a suspect after that suspect has requested an attorney if: (1) the suspect initiates the conversation with the police and (2) the suspect makes a knowing and voluntary waiver of the right to counsel and to remain silent. Velasquez, 885 F.2d at 1084 (citing Oregon v. Bradshaw, 462 U.S. 1039, 1045-46 (1983)). The Third Circuit has explained that a suspect initiates the conversation with law

enforcement when he "initiates a conversation 'evinc[ing] a willingness and a desire for a generalized discussion about the investigation.'" <u>Id.</u> at 1085 (alteration in original) (quoting <u>Bradshaw</u>, 462 U.S. at 1046).  To determine whether a waiver was made voluntarily, knowingly, and intelligently, the court must consider "'the totality of the circumstances.'" <u>Id.</u> at 1086 (quoting <u>Bradshaw</u>, 462 U.S. at 1046).  Whether a waiver is "knowing and intelligent" hinges on whether the suspect possessed "a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it." <u>Id.</u> at 1087 (quoting <u>Moran v. Burbine</u>, 475 U.S. 412, 421 (1986)).  The test for voluntariness is whether the statement is made as a result of "a free and deliberate choice rather than intimidation, coercion, or deception." <u>Moran</u>, 475 U.S. at 421.

## III.   DISCUSSION

In Booker's previous Motion to Suppress the three oral statements he made to Agent Roselli, he argued that those statements should be suppressed because Agent Roselli interrogated him after he had invoked his Fifth Amendment right to remain silent and his Sixth Amendment right to counsel.  After the November 2, 2006 Hearing, during which we heard the testimony of both Agent Roselli and Booker regarding the statements of November 30, December 8, and December 22, 2004, reviewed the Government's exhibits, and observed the demeanor of both witnesses, we found that Agent Roselli was a credible witness.  (11/2/06 Order-Mem. at 8-9.) We also found, by a preponderance of the evidence, that Booker initiated his conversations with Agent Roselli by asking to speak to the FBI about bank robberies and by asking to meet with Agent Roselli again at the conclusion of their November 30, 2004 meeting.  We further found, by a preponderance of the evidence, that Booker was given his <u>Miranda</u> rights and that he voluntarily, knowingly, and intelligently waived those rights.  (<u>Id.</u> at 9.)  We therefore denied

Booker's Motion to Suppress his three oral statements to Agent Roselli. (Id. at 9.) Booker has not moved for reconsideration of that decision.

While Booker's instant motion to suppress the three oral statements he made to Agent Roselli is also based on his refusal to waive his Miranda rights after his October 29, 2004 Atlantic City arrest, and on the fact that counsel had been appointed on his behalf in connection with both that arrest and a previous arrest, his argument centers on the conduct of Lieutenant Gibbney and Detective Dellabarba when they visited him at the ACCF. Booker's counsel states, in his "Memorandum of Law in Support of Defendant's Motion to Suppress Post-Arrest Statements," that the Darby Borough Police Officers who interrogated Booker while he was detained at the ACCF initiated their meeting with Booker, interrogated Booker without his counsel being present, and failed to give Booker his Miranda warnings prior to questioning him, thereby violating Booker's Fifth Amendment right to remain silent and his Sixth Amendment right to counsel. (Booker Mem. at 3.) There is however, **nothing** in the record before us that supports any of these claims. Despite his failure to submit even a signed declaration by Booker attesting to these claims, counsel argues that, since the Darby Borough Police Officers violated Booker's constitutional rights prior to informing Agent Roselli that Booker wanted to talk to an FBI agent, Booker's voluntary statements to Agent Roselli, that he made after waiving his Miranda rights, should be "suppressed as the fruit-of-the-poisonous tree pursuant to Wong Sun v. United States, 371 U.S. 471, 484 (1983) [sic]". (Booker Mem. at 4.)

In Wong Sun, 371 U.S. 471 (1963), the Supreme Court "held that evidence and witnesses discovered as a result of a search in violation of the Fourth Amendment must be excluded from evidence." Oregon v. Elstad 470 U.S. 298, 305-06 (1985) (citing Wong Sun, 371 U.S. 471). "The Wong Sun doctrine applies as well when the fruit of the Fourth Amendment violation is a

confession." Id. The Supreme Court has, however, rejected the application of the Wong Sun fruits of the poisonous tree doctrine to violations of Miranda. In Elstad, the Supreme Court explained that:

> It is an unwarranted extension of Miranda to hold that a simple failure to administer the warnings, unaccompanied by any actual coercion or other circumstances calculated to undermine the suspect's ability to exercise his free will, so taints the investigatory process that a subsequent voluntary and informed waiver is ineffective for some indeterminate period. Though Miranda requires that the unwarned admission must be suppressed, the admissibility of any subsequent statement should turn in these circumstances solely on whether it is knowingly and voluntarily made.

Id. at 309. As the Third Circuit has explained, "[i]n Elstad, the Court specifically rejected the proposition that the 'fruit of the poisonous tree' doctrine, which in the fourth amendment context requires the exclusion of evidence or confessions obtained as a result of a constitutional violation, extends to violations of the Miranda decision." United States v. Johnson, 816 F.2d 918, 922 (3d Cir. 1987) (citing Elstad, 470 U.S. at 309). Instead, the Supreme Court determined that "Miranda requires only that the circumstances surrounding a subsequent confession be evaluated to determine whether the confession was knowing and voluntary." Id. Consequently, "a suspect's subsequent choice to waive his or her rights after a proper administration of Miranda warnings should ordinarily suffice to dissipate the coercive impact of the earlier [Miranda violation] and to demonstrate knowledge and voluntariness." Id. at 922-23 (citing Elstad, 470 U.S. at 311).

In determining whether a statement to police made after a Miranda violation is admissible, we "consider the totality of circumstances surrounding" that statement to "determine if that statement was the result of a knowing, voluntary and intelligent waiver of the protections implicit in the Miranda warnings." United States v. Tyler, 164 F.3d 150, 158 (3d Cir. 1998) (citing Colorado v. Spring, 479 U.S. 564, 572–73 (1987)). Our inquiry includes the following

factors: "'who initiated the [initial] interrogation, the time that elapsed between the two interrogations, the extent to which the same police were involved in both interrogations, the manner in which the [initial] interrogation was conducted,' and any other relevant factors." United States v. Latz, 162 F. App'x 113, 120 (3d Cir. 2005) (alteration in original) (quoting Tyler, 164 F.3d at 158).

Assuming, arguendo, that the Darby Borough Police Officers who spoke to Booker at the ACCF, and subsequently notified Agent Roselli that Booker would like to speak to an FBI agent, violated Booker's Miranda rights, Booker's oral statements to Roselli will be admissible only if, considering the totality of the circumstances, those statements were "the result of a knowing, voluntary and intelligent waiver of the protections implicit in the Miranda warnings." Tyler, 164 F.3d at 158. The evidence on the record before us[2] establishes that, before he spoke with Agent Roselli on November 30, 2004, December 8, 2004, and December 22, 2004, Booker was given Miranda warnings, reviewed the warnings, and executed knowing and voluntary waivers of those protections. (11/2/06 Hr'g Tr. at 13-14, 37, 58, 63-64; Gov't Hr'g Exs. 5, 6; 11/14/12 Hr'g Tr. at 9-11.) The record evidence also establishes that the Darby Borough Police Department officers, who allegedly failed to give Booker his Miranda warnings when he spoke to them at the ACCF, were not present when Booker met with Agent Roselli on November 30, 2004, December 8, 2004 and December 22, 2004. The record shows that Agent Roselli was accompanied by Agent Furey when he met with Booker on November 30, 2004 (see 11/2/06 Hr'g Tr. at 13); Agent Roselli was accompanied by Agent Perzichilli when he met with Booker on December 8, 2004 (see id. at 14); and Agent Roselli was accompanied by Upper Darby Police Department

_____

[2]As we stated supra, we found Agent Roselli to be a credible witness during our November 2, 2006 Hearing. (11/2/06 Order-Mem. at 8-9.) We also found him to be a credible witness during our November 14, 2012 Hearing.

Detectives Pitts and Slowik when he transported Booker from ACCF to Philadelphia on December 22, 2004 (see id. at 31). There is also evidence on the record of this Motion that at least a few days, and possibly a week, passed between Detective Dellabarba's and Lieutenant Gibbney's meeting with Booker and Agent Roselli's visit to Booker on November 30, 2004.[3] (11/14/12 Hr'g Tr. at 12.)

There is no evidence on the record of this Motion regarding who initiated Booker's meeting with Detective Dellabarba and Lieutenant Gibbney.[4] There is also no evidence regarding the manner in which that meeting was conducted. There is evidence that Booker initiated his first meeting with Agent Roselli by asking to speak with the FBI (11/2/06 Hr'g Tr. at 12, 47); that Booker initiated his December 8, 2004 meeting with Agent Roselli when he asked Agent Roselli to return at the conclusion of their November 30, 2004 discussion (id. at 23); and that Booker initiated his transfer to Philadelphia, and thus his car ride to Philadelphia with Roselli on December 22, 2004, when he asked Roselli to federally adopt his case on November 30, 2004 (id. at 17-18).

Booker has not moved to suppress any statements he made to the Darby Borough Police Officers who he contends violated his Miranda rights. Rather, he has moved to suppress statements that he made to different law enforcement officers, at least a few days later, after he was given Miranda warnings, reviewed the warnings, and executed waivers of those protections.

---

[3] Defense counsel suggested during the November 14, 2012 Hearing that Detective Dellabarba and Lieutenant Gibbney met with Booker at the ACCF on November 2, and 10, 2004. (11/14/12 Hr'g Tr. at 14.) However, there is no evidence on the record to support counsel's suggestions.

[4] Defense counsel states, in his Memorandum of Law, that the Darby Borough Police officers "initiated the contact by just showing up out-of-the-blue at the ACCF on a day after October 29, 2004." (Booker Mem. at 3.) However, there is no evidence on the record to support this assertion.

Having considered the "totality of circumstances surrounding" Booker's November 30, December 8, and December 22, 2004 statements to Agent Roselli, we conclude that the Government has established, by a preponderance of the evidence, that Booker initiated his conversations with Agent Roselli on those dates and that his statements resulted from his "knowing, voluntary, and intelligent waiver[s] of the protections implicit in the Miranda warnings." Tyler, 164 F.3d at 158 (citing Spring, 479 U.S. at 572-73); see also Velasquez, 885 F.2d at 1084 (recognizing that a police officer may interrogate a suspect after he has requested an attorney if the suspect initiates the conversation and makes a knowing and voluntary waiver of the right to counsel and right to remain silent (citing Bradshaw, 462 U.S. at 1045-46)). Consequently, we further conclude that Booker's "subsequent choice to waive his . . . rights after a proper administration of Miranda warnings . . . suffice[s] to dissipate the coercive impact of the earlier [Miranda violation] and to demonstrate knowledge and voluntariness." Johnson, 816 F.2d at 922-23 (citing Elstad, 470 U.S. at 311). Booker's statements to Agent Roselli on November 30, December 8, and December 22, 2004, therefore cannot be considered the fruit of the poisonous tree and thus are not subject to exclusion from evidence at trial pursuant to Wong Sun, 371 U.S. 471.

IV. **CONCLUSION**

For the foregoing reasons, Defendant's Amended Motion to Suppress is denied. An appropriate order follows.

BY THE COURT:

/s/ John R. Padova

_____

John R. Padova, J.